UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSHUA W. HARMON,

                Plaintiff,

v.                                                    Case No. 24-cv-437-pp

WISCONSIN DEPARTMENT
OF CORRECTIONS, *et al.*,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTION TO PAY REMAINDER OF FILING FEE FROM RELEASE ACCOUNT (DKT. NO. 9), SCREENING AMENDED COMPLAINT (DKT. NO. 10) UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

---

      Plaintiff Joshua W. Harmon, an individual incarcerated at Oshkosh Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. On April 26, 2024, the court received the plaintiff's amended complaint. Dkt. No. 10. Because the court has not yet screened the original complaint, this decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens the amended complaint, dkt. no. 10. See Fed. R. Civ. P. 15(a)(1). The amended complaint "supersedes all previous complaints and controls the case from th[is] point forward." Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 1999) (citing Carver v. Condie, 169 F.3d 469, 472 (7th Cir. 1999).

I.  **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On April 18, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $40.15. Dkt. No. 6. The court received that fee on May 2, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

II.  **Screening the Amended Complaint**

A.  Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The amended complaint names as defendants the Wisconsin Department of Corrections (DOC), DOC Secretary Kevin A. Carr, C. O'Donnell of the Office of the Secretary, Corrections Complaint Examiner Emily Davidson, Warden Cheryl Eplett, Security Director Emil Toney, Administrative Captain Eric Henslin, Institutional Complaint Examiner Jeffrey Freund and Correctional Officer or Sergeant Mark Borkowsky. Dkt. No. 10 at ¶¶1, 5–11.

The plaintiff alleges that on October 22, 2023, his family came to visit him at Oshkosh at around 2:50 p.m. Id. at ¶12. At around 4:10 p.m., the plaintiff went to the officer's desk to ask Sergeant Borkowsky if he could use the bathroom. Id. Borkowsky told the plaintiff he would have to wait until the visit's scheduled end at 5:00 p.m., "after count at 4:40pm has cleared." Id. The plaintiff returned to the visiting area and told his family he had to wait. Id. The plaintiff says his family left at 4:50 p.m., and he cleaned the area "and was pat searched shortly after before leaving the vising area." Id.

At around 5:08 p.m., the plaintiff and other incarcerated persons left the visiting area and walked toward the sergeant's desk. Id. at ¶13. The plaintiff says there is a bathroom "along the hall way," so he asked Borkowsky if he could use it. Id. Borkowsky again told the plaintiff he would have to wait and "get scanned in before [he] can use the bathroom." Id. The plaintiff says he complied to avoid a conduct report. Id. He and the other incarcerated persons lined up and waited to be scanned through the metal detector or "scan machine." Id. at ¶14. As the plaintiff passed through the detector, he again

asked Borkowsky if he could use the bathroom, telling him he had "been waiting for over an hour and really need[ed] to use the bathroom." Id. Borkowsky denied the request and told him "it will be a second." Id. A few minutes later, Borkowsky and Sergeant Deschler (not a defendant) scanned the plaintiff through the metal detector. Id. at ¶15. The plaintiff then began to urinate on himself because he "was in fear of disciplinary action and [the officers] denied [him] multiple times to use the bathroom." Id. The plaintiff finished with the machine and started to leave, when he heard other officers and incarcerated persons laughing. Id. The plaintiff says he changed into shorts he had on under his uniform and walked back to his housing unit "in [his] piss stained shorts." Id.

The plaintiff says that the Division of Adult Institutions (DAI) and Oshkosh handbooks have provisions regarding incarcerated persons who need to use the bathroom after a visit. Id. at ¶16. He says that the DAI handbook allows incarcerated persons to use the bathroom one at a time during visits, but that Oshkosh policy provides that incarcerated persons must wait until the visit is over to use the bathroom. Id. The plaintiff says that neither policy mentions whether the incarcerated person must be scanned back in before using the bathroom. Id.

Later the same day, the plaintiff filed an institutional complaint about the incident. Id. at ¶17. He says that he had "be[en] made aware of [a] conduct report," and he contested being punished "for something [he] had no control over." Id. The plaintiff says it was not until the next day—October 23, 2023—

that he received the conduct report from Sergeant Passarella (not a defendant) for "creat[ing] a risk of serious disruption at the facility or community." Id. at ¶19. The plaintiff contested this major disposition because he "didn't do anything wrong during the incident." Id.

The plaintiff says that Captain Henslin reviewed the major disposition and completed the conduct report, but under DOC policy, the Security Director is supposed to review and sign off on the report. Id. at ¶20. He says Henslin "does not have the authority to sign and approve a major disposition." Id. He says that only Security Director Toney had the authority to review and sign the conduct report under DOC policy. Id. The plaintiff alleges that Toney "did not act accordingly to WIDOC policy and failed to assess the scope of the conduct report before the disposition was administered." Id.

The plaintiff alleges that on October 25, 2023, Toney responded to his request for surveillance footage from October 22, 2023, and requested that he come to his office to discuss the conduct report. Id. at ¶21. Toney then told the plaintiff that he would dismiss the conduct report and that he needed the plaintiff's signature for approval. Id. The plaintiff signed off, and the conduct report was dismissed. Id. The plaintiff says that because Toney dismissed this report, it "can be determined as harassment" under DOC policy. Id.

The plaintiff alleges that on November 20, 2023, Freund reviewed his institutional complaint and recommended dismissing it because the plaintiff had not first raised his issues through the disciplinary appeal process and because the plaintiff had agreed to dismissal of the conduct report. Id. at ¶22.

6

The plaintiff says this was improper because he filed his complaint about not being allowed to use the restroom, not about his conduct report. Id. Freund wrote that because "this matter had been resolved through DOC 303," it was not subject to the institutional complaint review system. Id. at ¶23. The plaintiff contests this conclusion and says he should have been allowed to raise the issue under "Title 28 C.F.R. §40.4 Accessibility and §40.5 Applicability." Id.

The plaintiff alleges that "[u]ltimately the inmate complaint was dismissed." Id. at ¶24. He says Warden Eplett accepted Freund's recommendation to dismiss the complaint because his "conduct report was ultimately [d]ismissed." Id. The plaintiff says that on November 24, 2023, he appealed the dismissal of his complaint, and Davidson received his appeal six days later. Id. at ¶25. The plaintiff says Davidson "reviewed the record and determined there didn't need to be an investigation." Id. The plaintiff says Davidson relied on the complaint and previous decisions and recommended dismissing his appeal because, "The institution addressed the complaint" and "the disciplinary record was dismissed outright by the warden." Id.

On December 20, 2023, C. O'Donnell at the Office of the Secretary acknowledged receipt of the plaintiff's appeal, accepted Davidson's recommendation and dismissed the appeal. Id. at ¶26. But she noted that

> [t]he complaint's original filing requested that the conduct report be dismissed. It has been so his issue was resolved. Through the filing of this complaint, the Warden is aware of the concern raised regarding bathroom usage while visiting and she has copied the Security Director on the decision. This was an unfortunate situation and [she is] confident the institution will address the issue.

7

Id. The plaintiff alleges that Secretary Carr "made a decision at the discression [*sic*] of the (OOS) as previously stated in C. O'Donnell's report." Id. at ¶27. He alleges that Secretary Carr "neglects to adhere to the WIDOC policies and procedures within the conduct report." Id.

The plaintiff asserts that Borkowsky subjected him "to direct orders, that lead [*sic*] to punitive damages" when he told the plaintiff that he could not use the bathroom until he had been scanned back into the institution. Id. at ¶28. He says Henslin improperly "subjected [the plaintiff] to disciplinary action" when he signed the major disposition. Id. at ¶29. He says Toney failed to follow proper prison procedures that resulted in the major disposition against the plaintiff, which Toney then dismissed. Id. at ¶30. He says Henslin and Toney acted negligently, which "cause[d] an indifference throughout the ICRS as a means of p[re]venting [him] from filing grievances about the situation." Id. The plaintiff faults Freund and Warden Eplett for their handling of his institutional complaint. Id. at ¶¶31–32. He says Davidson, O'Donnell and Carr "relied on the warden's decision to accurately depict the policies and procedures implemented with the ICE's report that adheres to the reason for dismissing the inmate complaint." Id. at ¶33.

The plaintiff seeks declaratory and injunctive relief. Id. at ¶1. He asks the court "to appoint a Receiver to oversee any and all directives and/or remedies this Court orders against Defendants" and to order Warden Eplett to "reinstall a toilet/ur[in]al in the visiting restroom for inmates to use while on a visit." Id. at ¶¶34–35. He also seeks punitive damages from each defendant. Id. at ¶36.

C. Analysis

The plaintiff first claims that Borkowsky violated the plaintiff's rights by not letting him use the bathroom during or immediately after his family visit on October 22, 2023, which caused him to urinate on himself. The court analyzes these allegations under the Eighth Amendment, which prohibits cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Id. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

Several courts that have considered this issue have found that "[t]emporary lack of toilet access is not cruel and unusual punishment." Harris v. Jones, Case No. 20-1625, 2021 WL 4950248, at *2 (7th Cir. Oct. 25, 2021); see Davis v. Gomez, Case No. 20-CV-4683, 2023 WL 2572471, at *3 (N.D. Ill. Mar. 20, 2023) (citing cases). But some other courts have recognized that "there may be some situations in which denying an inmate access to a bathroom could be a constitutional violation, such as denying bathroom access

to an inmate who cannot control his bladder due to disability, or where denying access to a bathroom could pose a risk of serious harm to the inmate." Young v. Fischer, Case No. 20-CV-1084-BBC, 2021 WL 510730, at *2 (W.D. Wis. Feb. 11, 2021) (internal citations omitted).

This case does not resemble the latter situations. The plaintiff alleges that he was denied toilet access for about an hour. He has not alleged that he has a medical condition that made him incontinent, nor has he alleged that Borkowsky had any reason to know the plaintiff would be unable to wait to use the bathroom until after he was scanned back into the institution. He has not alleged that Borkowsky acted maliciously and intentionally in causing the plaintiff to soil himself. He has not alleged that he faced a risk of serious harm by not being able to use the bathroom for an hour. He has not alleged that he had to remain in his soiled clothes for an extended time after he was scanned back into the institution. He has not alleged that he suffered any physical injury by having to wait and eventually urinating on himself. Nor has the plaintiff alleged that this is an ongoing issue or that he has repeatedly been denied use of a bathroom. See Brown v. Carr, Case No. 20-CV-0206-BHL, 2020 WL 6273399, at *4 (E.D. Wis. Oct. 26, 2020) (allowing incarcerated plaintiff to proceed on claim alleging that over nearly eighteen months, he "experience[d] 'numerous' incidents of soiling himself" because of a bathroom policy at Redgranite Correctional Institution).

The plaintiff's frustration is understandable. He repeatedly asked Borkowsky to use a bathroom, including one that he passed on the way to scan

10
Case 2:24-cv-00437-PP   Filed 05/13/24   Page 10 of 20   Document 11

back into the institution. Borkowsky continued to deny his requests and tell him he would have to complete count, then scan in and then continue to wait. The plaintiff could not hold it any longer and soiled himself in front of officers and other incarcerated persons. As O'Donnell noted in her decision dismissing the plaintiff's appeal, this was an unfortunate situation with embarrassing consequences for the plaintiff. But these alleged events, while frustrating and embarrassing, do not constitute a violation of the Eighth Amendment.

The plaintiff also alleges that Borkowsky cited Oshkosh policy to justify making the plaintiff wait. That policy says incarcerated persons must wait until after a visit is completed to use the bathroom. The plaintiff suggests that Borkowsky should have followed DAI policy, under which he would have been allowed to use the bathroom. But allegations that a prison official did not follow proper prison policy does not state a claim under §1983. See Hunter v. Mueske, Case No. 22-1340, 2023 WL 4553391, *4 & n.1 (7th Cir. July 17, 2023) (rejecting argument that violation of prison policy, on its own, violated Eighth Amendment).

Nor has the plaintiff stated a claim against Henslin or Toney. The plaintiff alleges that Henslin reviewed and signed the major disposition for the October 22, 2023 events without authority. He says that only the Security Director (Toney) could sign that document, and he says Toney failed to do so, which violated prison policy. As the court recounted above, these alleged violations of prison policies or procedures do not state a federal claim under §1983. See Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017);

11
Case 2:24-cv-00437-PP   Filed 05/13/24   Page 11 of 20   Document 11

Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003). Even if either of these defendants did fail to follow proper prison procedures for reviewing the major disposition, Toney dismissed the conduct report that led to the major disposition. The plaintiff has not alleged that he received any punishment because of the conduct report or served any time of the major disposition. He alleges no redressable harm from the defendants filing and then dismissing this conduct report and major disposition, regardless of the prison procedure they followed or allegedly violated.

The plaintiff also says that by not reviewing and eventually dismissing the major disposition, Toney harassed him under DOC policy. The Seventh Circuit has explained that allegations of harassment, "while regrettable, [are] not what comes to mind when one thinks of 'cruel and unusual' punishment." See Dobbey v. Ill. Dep't of Corr., 574 F.3d 443, 446 (7th Cir. 2009). In Dobbey, the Seventh Circuit affirmed the dismissal of a claim against a correctional officer who "hung a noose from the ceiling of the room," "swatted at the noose to make it swing back and forth" and "then sat down in a chair and 'crossed his arms looking crazy with evil eyes.'" Id. at 444. The court compared this to other cases allowing a claim to proceed, such as Burton v. Livingston, 791 F.2d 97, 100–01 (8th Cir. 1986), where a guard pointed a gun at an incarcerated person, cocked it, called him a racial epithet and repeatedly threatened to shoot him. Id. at 446. The court also differentiated Dobbey from Irving v. Dormire, 519 F.3d 441, 445, 449–50 (8th Cir. 2008), in which an incarcerated person "alleged that a guard had threatened to kill him, repeatedly offered a

12
Case 2:24-cv-00437-PP   Filed 05/13/24   Page 12 of 20   Document 11

bounty to any prisoner who would assault him, and gave a prisoner a razor blade with which to assault him." Id.

For the same reasons the court explained above regarding Borkowsky, the plaintiff has not stated a claim about the "harassment" from Toney. The plaintiff says he received a conduct report for a major disposition after he soiled himself waiting to use the restroom because an officer repeatedly made him wait. He contested the incident, which was construed as a challenge to the conduct report he received. Toney called the plaintiff to his office and dismissed the conduct report. The plaintiff's grievance also was eventually dismissed because the conduct report had been thrown out. But the institution still took note of the incident (as the court explains below), and the plaintiff does not allege that he suffered any injury (other than perhaps the humiliation of soiling himself in front of other incarcerated persons and officers). The plaintiff says that an officer other than Toney filed the conduct report, and he says Henslin reviewed it (improperly). He has no basis to claim that Toney harassed him by filing or approving the conduct report because Toney did neither of those things—Toney *dismissed* the conduct report. The plaintiff has not stated a claim against Toney.

The plaintiff next sues complaint examiner Freund and Warden Eplett for improperly dismissing his institutional complaint. He sues corrections complaint examiner Davidson and O'Donnell for not investigating and dismissing his appeal. But there is no inherent constitutional right to a prison grievance system. Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996).

Nothing in the Constitution mandates prison grievance procedures, and the fact that a prison provides them does not "create interests protected by the Due Process Clause." Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011). That means that "the alleged mishandling of [an incarcerated person's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." Id. (citing George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007)).

In certain circumstances, a prison official may be found deliberately indifferent if he or she disposes of grievances without reading them or otherwise leaves "prisoners to face risks that could be averted by faithful implementation of the grievance machinery." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). But the plaintiff has not alleged that Freund, Eplett, Davidson or O'Donnell did those things. He instead takes issue with the procedures on which they relied in dismissing his complaint or their alleged misunderstanding of the issue he was grieving. Those allegations relate to how the officials handled the plaintiff's complaint and appeal. Because he has no right to a particular outcome on his grievance, the plaintiff has not stated a claim against Freund, Eplett, Davidson or O'Donnell for how they handled his institutional complaint.

The plaintiff also alleges that Henslin and Toney acted negligently, which prevented him from filing a grievance about the October 22, 2023 incident. But negligence does not violate the constitution. Farmer v. Brennan, 511 U.S. 825, 835–36 (1994). Even if it did, the plaintiff does not say that he was prevented from filing a grievance. He alleges that he was able to grieve the issue about on October 22, 2023 bathroom access. Even though O'Donnell dismissed the

14

Case 2:24-cv-00437-PP   Filed 05/13/24   Page 14 of 20   Document 11

plaintiff's appeal, she acknowledged the plaintiff's concern about using the bathroom during visits and noted that the plaintiff's complaint put the Warden on notice of his concern. She then copied the Security Director on her decision and expressed confidence that "the institution will address the issue." Dkt. No. 10 at ¶26. The purpose of a grievance is "to give prison administrators an opportunity to address a shortcoming." Glick v. Walker, 385 F. App'x 579, 582 (7th Cir. 2010) (citing Jones v. Bock, 549 U.S. 199, 218 (2007)). As O'Donnell's note shows, the plaintiff's grievance accomplished that. It put the Warden and Security Director, among other prison officials, on notice of an issue at the institution, which they now may address. The plaintiff's own allegations show that no defendant's actions prevented him from filing his grievance and from it accomplishing its purpose. The plaintiff has not stated a claim against any defendant regarding his grievance or its dismissal.

The plaintiff sues DOC Secretary Carr but has not explained how he was involved in the alleged events. The plaintiff has not alleged that Carr witnessed the incident on October 22, 2023, and he has not alleged that Carr personally reviewed and dismissed his complaint (which, as the court just described, would not state a claim anyway). It appears that the plaintiff seeks to hold Carr responsible based on Carr's role as DOC Secretary. The plaintiff states in his description of Carr that Carr "is responsible for the management of the" DOC. Dkt. No. 10 at ¶5. But administrators and supervisors like Carr "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Iqbal, 556 U.S. at 676. The plaintiff "must

15

Case 2:24-cv-00437-PP   Filed 05/13/24   Page 15 of 20   Document 11

plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. The amended complaint does not do this. It does not allege that Carr had any personal involvement in the alleged events or that he took any action related to the plaintiff's accident or grievance about it. Because the plaintiff has not explained how Carr was personally involved in any way, he has not stated a claim against Carr.

Finally, the plaintiff names the DOC as a defendant, but the DOC is not a "person" that can be sued under §1983. See Myers v. Ind. Dep't of Corr., 655 F. App'x 500, 503 (7th Cir. 2016) The court could construe this claim as alleged against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). States are immune from claims brought under §1983. See Welch v. Tex. Dep't of Highways & Pub. Transp., 483 U.S. 468, 472 (1987); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).

The amended complaint does not state a claim for relief. District courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, but the plaintiff already has taken advantage of that opportunity and filed an amended complaint. The court does not need to provide the plaintiff a second opportunity to amend his complaint—especially when, as here, "'it is *certain*' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). The plaintiff's amended complaint is thorough in its allegations of facts surrounding his claims. The court finds that further

16
Case 2:24-cv-00437-PP   Filed 05/13/24   Page 16 of 20   Document 11

amendment would not alter its conclusion that the plaintiff has not stated a viable claim about the October 22, 2023 incident.

### III. Request to Pay Filing Fee From Release Account

On April 25, 2024, the court received a letter from the plaintiff in which he asks the court to allow him to pay the remainder of the filing fee ($350 less the $40.15 initial partial filing fee) from his release account. Dkt. No. 9. He says he has "the funds on [his] release account to pay the full filing fee," but that he needs "a court order sent to the 'Business Office' at Oshkosh" to allow him to use that account to pay the remainder of the fee. Id.

The term "prisoner's account" as used in 28 U.S.C. §1915 "encompasses both [the plaintiff's] release account and his general account." Spence v. McCaughtry, 46 F. Supp. 2d 861, 862 (E.D. Wis. 1999). The release account "is a restricted account maintained by the Wisconsin Department of Corrections to be used upon the prisoner's release from custody upon completion of his sentence." Wilson v. Anderson, Case No. 14-cv-798, 2014 WL 3671878, at *3 (E.D. Wis. July 23, 2014) (citing Wis. Admin. Code §DOC 309.466). Courts in this district have permitted incarcerated persons to use their release accounts to pay the *initial* partial filing fee. E.g. Doty v. Doyle, 182 F. Supp. 2d 750, 751 (E.D. Wis. 2002); Spence, 46 F. Supp. 2d at 862–63. But absent unusual circumstances, this court has no authority to order (or allow) an incarcerated litigant to "tap into his release account to pay current (or future) litigation costs." McCalla v. Thompson, Case No. 18-cv-1895, 2019 WL 3220551, at *2 (E.D. Wis. July 17, 2019) (citing Wilson, 2014 WL 3671878, at *3); see also

17
Case 2:24-cv-00437-PP   Filed 05/13/24   Page 17 of 20   Document 11

Collins v. State of Wisconsin, Case No. 20-cv-521-pp, 2020 WL 6361860, at *2 (E.D. Wis. Oct. 29, 2020) ("Although courts often will allow plaintiffs to pay the *initial partial filing fee* with funds from their release account, they generally do not allow plaintiffs to deplete their release accounts by paying the full filing fee from that account.").

There is no statutory authorization for the plaintiff to pay the remainder of the filing fee from his release account. As the name suggests, the purpose of that account is to provide funds for his release. That intended purpose is reason not to permit him to use the release account to pay the full filing fee. See Collins, 2020 WL 6361860, at *2 (citing Smith v. Huibregtse, 151 F. Supp. 2d 1040, 1042 (E.D. Wis. 2001)). The court will deny the plaintiff's request to pay the balance of his filing fee from his release account. He must make payments toward that balance with the money in his regular account, as the court explained above.

### IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's motion to pay the remainder of his filing fee from his release account. Dkt. No. 9.

The court **DISMISSES** this case under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the amended complaint fails to state a claim. The clerk will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g). The court will email a copy of this order to DLSFedOrdersEastCL@doj.state.wi.us.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$309.85** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Oshkosh Correctional Institution.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to

19

Case 2:24-cv-00437-PP   Filed 05/13/24   Page 19 of 20   Document 11

proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court.* See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed another "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 13th day of May, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**